Les BROWNLEE, Acting Secretary of the Army, Appellant,

v.

DYNCORP, Appellee.

No. 02–1601.

United States Court of Appeals, Federal Circuit.

Nov. 13, 2003.

Domenique Kirchner, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellant. With her on the brief were David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief was Craig S. Clarke, Deputy Chief Trial Attorney, Contract Appeals Division, United States Army Legal Services Agency, of Arlington, Virginia.

Craig A. Holman, Holland & Knight, LLP, of Washington, DC, argued for appellee. With him on the brief was Richard O. Duvall, Holland & Knight, LLP, of McLean, Virginia.

Before MICHEL, LOURIE, and DYK, Circuit Judges.

DYK, Circuit Judge.

This case presents two significant issues. The first is whether the appeal by Les Brownlee, Acting Secretary of the Army, ("Army") to this court concerning the Board's June 21, 2000, entitlement decision is timely. We hold that it is. The mere fact that the government could have appealed the Board's June 21, 2000, entitlement decision does not prohibit the government from raising entitlement issues in an appeal from the Board's subsequent quantum decision.

On the merits, the question is whether the Armed Services Board of Contract Appeals ("Board") correctly awarded as allowable contract costs a part of the contractor's legal fees incurred in defending against criminal charges brought by the United States. The Board assumed that Federal Acquisition Regulation ("FAR") 31.205–47(b), 48 C.F.R. § 31.205–47(b) (1991), made unallowable criminal defense costs incurred by a government contractor in a proceeding in which one of its employees was convicted of criminal conduct. However, the Board held the regulation invalid on the ground that it was contrary to the statute (10 U.S.C. § 2324 (2000)) and that the statute allowed partial cost recovery. We conclude that the regulation disallows recovery of the contractor's costs incurred in a proceeding in which an employee is convicted; that the regulation is valid because the statute does not mandate a contrary result; and that such defense costs are accordingly not allowable.

## BACKGROUND

In 1991, the Army awarded DynCorp a cost-plus-award-fee contract for base support services at Fort Irwin, California. The contract included FAR 52.216–7, pursuant to which the government was required to pay the contractor's costs "in amounts determined to be allowable by the

Contracting Officer in accordance with Subpart 31.2 of the [FAR] in effect on the date of this contract."[1] (App. at 47.) Subpart 31.2 deals with the allowability of costs accrued under contracts between the government and commercial organizations. Among other things, the subpart includes FAR 31.205–47, which disallows the recovery by a contractor of costs related to certain legal proceedings. The government contends that the regulation disallows legal defense costs in a proceeding in which one of the contractor's employees is convicted of a criminal offense. The contractor disputes the government's interpretation of the regulation and urges that, if it is so construed, the regulation is invalid because it is contrary to the statute. The background of the present controversy is as follows.

In 1992, the Army Criminal Investigation Division began investigating allegations of criminal activity by DynCorp and its employees relating to DynCorp's performance of the contract. The allegations included fraud involving documentation related to vehicle maintenance; fraudulent use of government gasoline credit cards; and recording of false data by Larry Marcum, the Branch Manager for DynCorp's Bio–Medical Maintenance Branch. In accordance with the law of Delaware—DynCorp's state of incorporation—and DynCorp's bylaws, DynCorp paid the costs of its defense and the defense of its employees. The United States declined to prosecute the contractor, but it charged Mr. Marcum in a single-count information. The information alleged that Mr. Marcum input into a government accounting system "estimated hours, which represented the average time among all work centers using [the government accounting system] for performing a particular scheduled service," rather than the actual work hours his employees had expended. (App. at 94.) Mr. Marcum subsequently entered into a plea agreement with the government in which he pled guilty to a charge of unauthorized access to a government computer in violation of 18 U.S.C. § 1030(a)(3). No criminal or civil actions were filed against DynCorp as a result of the investigations.

On January 23, 1996, DynCorp submitted a certified claim to the Army seeking reimbursement of the costs it incurred in connection with the criminal investigation. DynCorp excluded from its claim the fees charged by the lawyers who conducted Mr. Marcum's defense. The Army contracting officer denied the claim on March 29, 1996, and DynCorp appealed the decision to the Board on April 2, 1996. On June 21, 2000, the Board rendered a decision on entitlement, holding that DynCorp could recover a portion of its defense costs. *DynCorp*, ASBCA No. 49714, 00–2 B.C.A. (CCH) ¶ 30,986 ("*Entitlement Decision*"), at 152,-930 (2000). The Board accepted, *arguendo*, the government's argument that FAR 31.205–47(b) barred recovery of defense costs for a proceeding in which only the contractor's agent or employee, not the contractor itself, was convicted. However, the Board found that, so construed, the regulation was "inconsistent" with 10 U.S.C. § 2324, as amended by the Major Fraud Act of 1988. *Id.* The Board found that the regulation was thus an unenforceable "mere nullity." *Id.* (quoting *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936)). The Board remanded the case for negotiation of quantum. *Id.* at 152,932. The Army did not appeal that decision to this court. On May 6, 2002, the Army stipu-

---

1. The applicable regulations are therefore those in effect on the contract's effective date of September 25, 1991. *See, e.g., Johnson v. All–State Constr., Inc.,* 329 F.3d 848, 851 n. 2 (Fed.Cir.2003). The present regulations are not materially different. *See* 48 C.F.R. § 31.205–47 (2002).

lated to the amount of DynCorp's fees, and the Board entered final judgment in DynCorp's favor on May 15, 2002. *DynCorp,* ASBCA No. 53098, *available at* 2002 WL 1009833. The Army then filed a notice of appeal in this court on September 11, 2002.

## DISCUSSION

### I

At the outset, we must resolve a challenge to our jurisdiction. The contractor contends that the government's appeal challenging the Board's June 21, 2000, decision as to entitlement is untimely because (1) the government could have appealed earlier from the Board's June 21, 2000, decision, and (2) having failed to appeal earlier, the government's present appeal on the issue of entitlement is time barred. We agree with the first proposition, but disagree with the second. We conclude that we have jurisdiction to consider the issue of entitlement.

### A

■ This court has exclusive jurisdiction "of an appeal from a final decision of an agency board of contract appeals pursuant to section 8(g)(1) of the Contract Disputes Act of 1978." 28 U.S.C. § 1295(a)(10) (2000). Although the statute requires that the Board's decision be "final," we have held that the concept of finality in this context is more flexible than, for example, the "rigid district court concept of finality" required by 28 U.S.C. § 1291. *Dewey Elecs. Corp. v. United States,* 803 F.2d 650, 655 (Fed.Cir.1986) ("*Dewey*"); *see also Rumsfeld v. Applied Cos.,* 325 F.3d 1328, 1333 n. 3 (Fed.Cir.); *cert. denied* —— U.S. ——, 124 S.Ct. 462, —— L.Ed.2d ——, 72 U.S.L.W. 3007 (2003). The relevant inquiry in determining finality in appeals pursuant to section 1295(a)(10) is "the scope of the contracting officer's decision, for this determines the extent of the contractor's right of appeal

and the board's jurisdiction." *Dewey,* 803 F.2d at 655; *see also Applied Cos.,* 325 F.3d at 1333 n. 3. In *Dewey* and *Applied Cos.,* the Board had only entitlement issues before it because the contracting officer had not considered quantum issues. *Dewey,* 803 F.2d at 655; *Applied Cos.,* 325 F.3d at 1333 n. 3. Similarly, the only issue resolved by the contracting officer in this case at the time of the Board's June 21, 2000, decision was the issue of entitlement. The Board's reversal of that determination by the contracting officer was therefore a final judgment for purposes of this court's review. *Applied Cos.,* 325 F.3d at 1333 n. 3 ("[S]ince the contracting officer did not decide quantum, but decided only entitlement, the Board's decision on entitlement is final and appealable to this court."); *Dewey,* 803 F.2d at 658. Thus, the government could have appealed from the June 21, 2000, Board decision at the time it was rendered.

### B

■ The government argues, however, that its decision not to appeal the earlier Board decision does not render the present appeal as to entitlement time barred. We agree. The statutory language authorizing an appeal from a "final" judgment does not address the consequences of a failure to appeal from that "final" judgment. As DynCorp admitted at oral argument, we have not previously decided this question. Cases such as *Dewey* and *Applied Cos.,* while permitting appeals from entitlement decisions, neither hold nor suggest that appeals are *required* before the question of quantum is resolved. Allowing the aggrieved party to wait for a truly final judgment before appealing furthers the purposes of both the Contract Disputes Act of 1978 ("CDA"), Pub.L. No. 95–563, 92 Stat. 2383, and the doctrine of finality. A contrary rule would force the government or the contractor to appeal

each and every Board entitlement decision that was appealable under our flexible final judgment approach or lose the right to appeal those issues when the case was truly final in the section 1291 sense. Requiring appeals under such circumstances would compel premature appeals that might in fact be mooted if the parties awaited a judgment concerning quantum, thus wasting the parties' and this court's resources.

A similar issue arises in connection with the final judgment rule appearing in section 1257 of the Judicial Code, 28 U.S.C. § 1257 (2000), which governs review of state-court judgments by writ of certiorari to the Supreme Court. In that context, the Supreme Court has adopted a flexible final judgment rule, just as we have in Board of Contract Appeals decisions under the CDA. In *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the Supreme Court set out four categories of "cases in which the Court has treated [a] decision on [a] federal issue as a final judgment for the purposes of 28 U.S.C. § 1257 and has taken jurisdiction without awaiting the completion of the additional proceedings anticipated in the lower state courts." *Id.* at 476–87, 95 S.Ct. 1029. In subsequent

cases under section 1257, the Supreme Court has repeatedly assumed that awaiting the conclusion of such additional proceedings does not render the request for review untimely. *See, e.g., Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) (deciding the case on the merits despite the petitioner's failure to appeal from an earlier, final state court judgment).[2]

So too, our sister circuits have permitted parties to wait for a final judgment, rather than requiring the parties to take an interlocutory appeal where interlocutory appeals are permitted by 28 U.S.C. § 1292.[3] For example, *Victor Talking Machine Co. v. George,* 105 F.2d 697 (3d Cir.), *cert. denied* 308 U.S. 611, 60 S.Ct. 176, 84 L.Ed. 511 (1939), held:

> A party, feeling himself aggrieved by an interlocutory decree ..., is given the right to appeal without awaiting a final decree [pursuant to 28 U.S.C. § 227 (now 28 U.S.C. § 1292(a)(1)) ], upon condition that he take his appeal within thirty days. *The statute, however, does not require an aggrieved party to take such an appeal in order to protect his rights, and, where it is not taken, does not impair or abridge in any way the*

---

**2.** *See also* Robert L. Stern et al., *Supreme Court Practice* § 3.7, at 156 (8th ed. 2002) ("It is one thing to hold that a litigant may seek early review of a state court decision because otherwise the federal constitutional issue might disappear or be eroded. But it is quite a different matter to hold that a litigant is precluded from review if, having carefully conserved his constitutional claims on the remand, he waits for the end of the state court litigation before bringing his federal claims to the Supreme Court. Finality is too practical a doctrine to be turned into such a trap for litigants...."); *Dickinson v. Petroleum Conversion Corp.,* 338 U.S. 507, 517, 70 S.Ct. 322, 94 L.Ed. 299 (1950) (Black, J., dissenting) ("Where, as here, arguments as to which of two decrees is 'final' may be considered relatively even, an appellate court should be free

to find 'finality' in either decree appealed from."). *But see Cox Broad. Corp.,* 420 U.S. at 511–12, 95 S.Ct. 1029 (Rehnquist, J., dissenting) (advocating the contrary approach).

**3.** Section 1292 permits interlocutory appeals, *inter alia,* to a court of appeals when a district court enters an interlocutory order "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court," § 1292(a)(1), and to this court "from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting," § 1292(c)(2).

*previously existing right upon appeal from the final decree to challenge the validity of the prior interlocutory decree.* The aggrieved party may, therefore, await the final determination of the case and upon appeal therefrom raise all questions involved in the case.... We conclude that upon this appeal from the final decree we have jurisdiction to review the question of the defendant's liability as well as the questions raised by the accounting.

*Id.* at 699 (emphasis added); *see also* 16 Charles Alan Wright et al., *Federal Practice and Procedure* § 3921, at 20 n. 27 (2d ed.1996) (collecting cases from other circuits). Other courts have applied the same rule in the context of 28 U.S.C. § 227a, which is the predecessor statute of 28 U.S.C. § 1291(c)(2), pursuant to which this court has exclusive jurisdiction "of an appeal from a judgment in a civil action for patent infringement which ... is final except for an accounting." *See, e.g., Bingham Pump Co. v. Edwards,* 118 F.2d 338, 339 (9th Cir.), *cert. denied* 314 U.S. 656, 62 S.Ct. 107, 86 L.Ed. 525 (1941) (applying the rule of *Victor Talking Machine* in this context); *see also* 16 Wright, *supra,* § 3928, at 361 ("Failure to take an interlocutory appeal permitted by the statute does not foreclose review on appeal from a final judgment of the questions that might have been raised by earlier appeal.").

Accordingly, we conclude that the government's appeal is not time barred and that we have jurisdiction. We proceed to the merits.

## II

■ We review the Board's decisions interpreting statutes and regulations without deference. *E.g., General Elec. Co. v. Delaney,* 251 F.3d 976, 978 (Fed.Cir.2001).

In this case, we conclude that the Board has seriously misread the governing statutory provisions.

### A

At least since 1983, the FAR has barred the recovery of legal fees as a cost under government contracts if those fees were incurred in defense of a fraud proceeding that resulted in a conviction. *See* Establishing the Federal Acquisition Regulation, 41 Fed.Reg. 42,301, 42,327 (Sept. 19, 1983) (codified as amended at 48 C.F.R. § 31.205–47(b)).[4] The following regulation remained in place until 1986:

> Costs incurred in connection with defense of any ... criminal ... investigation, grand jury proceeding or prosecution ... *brought by the Government against a contractor, its agent or employee,* are unallowable *when the charges,* which are the subject of the investigation, proceedings, or prosecution, *involve fraud on the part of the contractor, its agent or employee,* as defined below, *and result in conviction* (including conviction entered on a plea of nolo contendere), judgment against the contractor, its agent or employees, or decision to debar or suspend, or are resolved by consent or compromise.

48 C.F.R. § 31.205–47(b) (1985) (emphases added).

Congress subsequently passed the Defense Procurement Improvement Act of 1985 ("1985 Act"), Pub.L. No. 99–145, 99 Stat. 583, 682–704, which limited certain costs that could be recovered against the government. The scope of the 1985 Act proved controversial. Congress was "strongly in favor of stating as a matter of public policy that certain costs would not be allowable on government contracts,"

4. Even before 1983, a similar regulation was included in the Defense Acquisition Regulations. *See* Defense Acquisition Circular 76–39 (Oct. 20, 1982) (codified as amended at 32 C.F.R. § 15–205.52 (1983)).

but it was concerned that "an absolute statutory prohibition on certain categories of costs might be unworkable." H.R. Conf. Rep. No. 99–235, at 449 (1985), *reprinted in* 1985 U.S.C.C.A.N. 571, 603. Therefore, Congress did not deal broadly with cost allowability, but it specifically barred the recovery of ten classes of costs under covered contracts, including:

> [c]osts incurred in *defense of any civil or criminal fraud proceeding* or similar proceeding (including filing of any false certification) brought by the United States *where the contractor is found liable or has pleaded nolo contendere to a charge of fraud or similar proceeding* (including filing of a false certification).

1985 Act § 911(a), 99 Stat. at 683 (codified at 10 U.S.C. § 2324(e)(1)(C)) (emphases added). Congress further directed: "The Secretary [of Defense] shall prescribe regulations to implement this section. Such regulations may establish appropriate definitions, exclusions, limitations, and qualifications." *Id.*, 99 Stat. at 683 (codified as amended at 10 U.S.C. § 2324(e)(2)). Congress also directed the Secretary of Defense to prescribe regulations to "define in detail and in specific terms those costs which are unallowable, in whole or in part, under covered contracts." *Id.*, 99 Stat. at 683 (codified as amended at 10 U.S.C. § 2324(f)(1)). Pursuant to the 1985 Act, the earlier regulation was continued in the following modified, but substantially similar, form covering proceedings leading to the conviction of either the contractor or its employees:

> Costs incurred in connection with defense of any ... Criminal ... investigation, grand jury proceeding, or prosecution ... *brought by the Government against a contractor, its agents or employees,* are unallowable *when the*

*charges,* which are the subject of the investigation, proceedings, or prosecution, *involve fraud or similar offenses (including filing of a false certification) on the part of the contractor, its agents or employees, and result in conviction* (including conviction entered on a plea of nolo contendere), judgment against the contractor, its agents or employees, or decision to debar or suspend, or are resolved by consent or compromise.

Federal Acquisition Circular 84–15, 51 Fed.Reg. 12,296, 12,302 (Apr. 9, 1986) (emphases added) (codified as amended at 48 C.F.R. § 31.205–47(b)).[5]

The next notable development was the enactment of the Major Fraud Act of 1988 ("1988 Act"), Pub.L. No. 100–700, 102 Stat. 4631. Among other things, the 1988 Act broadened the statutory grounds for cost disallowance in two respects: (1) by disallowing criminal defense costs in all types of proceedings not just those involving fraud where there was a conviction and (2) by limiting (but not completely barring) cost recovery where there was no conviction. These changes are reflected in the language of the 1988 Act.

First, the Act amended section 2324, disallowing "[c]osts incurred by a contractor in connection with any criminal, civil, or administrative proceeding commenced by the United States or a State, to the extent provided in subsection (k)." 1988 Act § 8(b)(1)(A), 102 Stat. at 4636 (adding subsection 2324(e)(1)(N)) (codified as amended at 10 U.S.C. § 2324(e)(1)(O)). Subsection (k) provides in pertinent part:

> (k) (1) Except as otherwise provided in this subsection [allowing, *inter alia,* otherwise disallowable costs to the extent provided by an agreement between the contractor and the United States], costs incurred by a contractor in connection

---

5. The coverage of the regulation was expressly revised "to comply with the provisions of Pub.L. 99–145, which ... authorized amendments to regulations to provide appropriate definitions, exclusions, limitations, and qualifications." 51 Fed.Reg. at 12,298.

with *any criminal, civil, or administrative proceeding* commenced by the United States or a State are not allowable as reimbursable costs under a covered contract *if the proceeding (A) relates to a violation of, or failure to comply with, a Federal or State statute or regulation,* and (B) results in a disposition described in paragraph (2).

(2) A disposition referred to in paragraph (1)(B) is any of the following:

(A) *In the case of a criminal proceeding, a conviction* (including a conviction pursuant to a plea of nolo contendere) by reason of the violation or failure referred to in paragraph (1).

*Id.* § 8(b)(2), 102 Stat. at 4636–37 (codified as amended at 10 U.S.C. § 2324(k)) (emphases added).

Second, when costs were not disallowed by subsection (k)(1), the 1988 Act allowed the contractor to recover criminal defense costs equal to eighty percent of the costs it incurred, but only if the costs were "otherwise allowable" under the regulations:

(5) (A) Except as provided in subparagraph (C), *costs incurred by a contractor in connection with a criminal,* civil, or administrative *proceeding* commenced by the United States or a State in connection with a covered contract may be allowed as reimbursable costs under the contract if such costs are not disallowable under paragraph (1), *but only to the extent provided in subparagraph (B).*

(B) (i) The amount of the costs allowable under subparagraph (A) in any case may not exceed the amount *equal to 80 percent of the amount of the costs incurred, to the extent that*

such costs are determined to be otherwise allowable and allocable under the single Government-wide procurement regulation issued pursuant to section 4(4)(A) of the Office of Federal Procurement Policy Act (41 U.S.C. 403(4)(A)) [*i.e.,* FAR].

. . . .

(C) In the case of a proceeding referred to in subparagraph (A), contractor costs otherwise allowable as reimbursable costs under this paragraph are not allowable if (i) such proceeding involves the same contractor misconduct alleged as the basis of another criminal, civil, or administrative proceeding, and (ii) the costs of such other proceeding are not allowable under paragraph (1).

*Id.,* 102 Stat. at 4637–38 (codified as amended at 10 U.S.C. § 2324(k)) (emphases added).

As a result of the 1988 Act, the regulations were amended in 1989, Federal Acquisition Circular 84–44, 54 Fed.Reg. 13,-022, 13,022 (Mar. 29, 1989), and minor cosmetic changes were made to subsection (b) in 1990, Federal Acquisition Circular 90–3, 55 Fed.Reg. 52, 782, 52,794 (Dec. 21, 1990). Thus, the regulation incorporated into the contract provided:

Costs incurred in connection with any proceeding brought by a Federal, State, local or foreign government for violation of, or a failure to comply with, law or regulation by the contractor (*including its agents or employees) are unallowable if the result is ... [i]n a criminal proceeding, a conviction.*

48 C.F.R. § 31.205–47(b) (1991) (emphasis added).[6]

---

6. The regulation currently provides:

Costs incurred in connection with any proceeding brought by a Federal, State, local, or foreign government for violation of, or a failure to comply with, law or regulation by the contractor (including its agents or em-

ployees), or costs incurred in connection with any proceeding brought by a third party in the name of the United States under the False Claims Act, 31 U.S.C. 3730, are unallowable if the result is ... [i]n a criminal proceeding, a conviction....

## B

■ The contractor here admits that its employee was convicted of a criminal offense, but it asserts that the legal fees incurred by the contractor are allowable. It makes two arguments: (1) that FAR 31.205–47(b) should be construed to be inapplicable when only the employee, but not the contractor, was convicted and (2) that if the regulation is construed to cover defense costs involving proceedings resulting in employee convictions, the regulation is invalid in view of the 1988 Act, which makes the costs allowable in part.

The Board did not adopt the contractor's proposed interpretation of the regulation, and we conclude that the interpretation is incorrect. The regulation disallows "[c]osts incurred in connection with any [criminal] proceeding brought by [the federal] government for violation of, or a failure to comply with, law or regulation by the contractor (*including its agents or employees*)" if a conviction results. 48 C.F.R. § 31.205–47(b) (1991) (emphasis added). In essence, the regulation defines the term "contractor" to include both the contractor and its employees. Indeed, the predecessor regulations clearly applied to employee proceedings.[7] The original regulation disallowed criminal defense costs where charges brought by the government "against a contractor, its agent or employee, . . . involve fraud on the part of the contractor, its agent or employee, . . . and result in conviction." 41 Fed.Reg. at 42,-327. The regulation remained largely the same after the 1985 Act, disallowing criminal defense costs where charges brought by the government "against a contractor, its agents or employees, . . . involve fraud or similar offenses (including filing of a false certification) on the part of the contractor, its agents or employees, and result in conviction." 51 Fed.Reg. at 12,302. Nothing in the history of the regulation subsequent to the 1988 Act indicates any intent to narrow the regulation's scope. *See* 54 Fed.Reg. at 13,022; 55 Fed.Reg. at 52,784.

Thus, we conclude that the regulation disallows costs incurred in the unsuccessful defense of criminal proceedings where an employee is convicted, even if the contractor is not. Furthermore, contrary to the contractor's contention, the regulation does not simply disallow the costs of defending the employee (which the contractor excluded from its claim); it disallows all costs of the proceeding, including the costs of defending the contractor, even though the contractor itself was not convicted.

## C

This then requires us to reach the contractor's alternate claim that the regulation is invalid when so construed. The Board agreed with the contractor, concluding that the regulation was invalid in light of the 1988 Act because the plain language of the 1988 Act compels the allowance of the contractor's costs. The Board's theory was that the statute disallows criminal defense costs only if the contractor itself is convicted and that subsection (k)(5) provides that other criminal defense costs "may be allowed," but only to the extent of "80 percent of the amount of the costs incurred." 10 U.S.C. § 2324(k)(5)(A)-(B). The Board is incorrect for each of two reasons.

First, the statute is ambiguous. Indeed, although the contractor notes that subsection (k)(2)(A) does not include the word

48 C.F.R. § 31.205–47(b) (2002).

**7.** Even the contractor admits that the predecessor regulations "might have prevented a contractor from recovering the legal defense costs of an employee based on the subsequent conviction of the employee." (Cont. Br. at 50.)

"employees," it does not include the word "contractor," either. Instead, it merely requires "a conviction." 10 U.S.C. § 2324(k)(2)(A). The contractor concedes that the subsection "does not expressly provide who must be convicted for purposes of cost disallowance." (Cont. Br. at 44.) So too, the Board agreed that these provisions "are not explicit regarding whether contractor wrongdoing is necessary for costs to be unallowable, or whether conviction of an employee will also bar recovery of proceeding costs." *Entitlement Decision* at 152,929. On its face, the statutory language is ambiguous. Contrary to the contractor's contention, nothing in the remainder of the 1988 Act or its legislative history resolves that ambiguity in favor of the contractor's limited interpretation.

The reference in subsection (k)(5)(C) to "contractor misconduct" does not suggest that only contractor convictions are covered by subsection (k)(2)(A) or that the subsection cannot be construed to include employees within the term "contractor." So too, nothing in the legislative history is particularly informative. The 1988 Act included criminal provisions which penalized fraud by "contractors." § 2(a), 102 Stat. at 4631–32 (codified as amended at 18 U.S.C. § 1031 (2000)). The contractor points to Senate Report 100–503, which states:

> The committee *did not attempt to modify or establish new principles regarding respondeat superior and other forms of vicarious liability in criminal prosecutions.* ... In order for the corporation to be liable for a crime involving a mental element, it is necessary to prove that the agent acted within the scope of his or her actual or apparent authority and with the intent to benefit the corporation.

S.Rep. No. 100–503, at 14 (1988), *reprinted in* 1988 U.S.C.C.A.N. at 5977 (emphasis added). As best we can understand this argument, the contractor contends that, by disallowing the contractor's costs in proceedings in which only the employee is convicted, the regulation is somehow imposing respondeat superior liability on the contractor for acts of the employee. But that premise is not sustainable. There is nothing in the regulation that imposes liability on the contractor for the acts of its agents. Rather, the regulation merely disallows certain contractor costs. *See* 48 C.F.R. § 31.205–47(b).

In addition, the contractor relies on the following statement by Senator Grassley in support of his amendment adding what became subsection (k) to the 1988 Act:

> In summary, the amendment provides that legal proceeding costs are unallowable in any criminal, civil or administrative proceeding brought by the Federal or State Government that results in a conviction, civil liability, the imposition of a fine or other monetary penalty, a suspension or debarment, or other similar result *evidencing a violation or failure to comply on the part of the contractor.*

134 Cong. Rec. 31,528 (1988) (emphasis added). The contractor argues that this statement referring to "contractor" violations manifests an intent to limit the disallowance provisions to situations in which the contractor itself was convicted. However, Sen. Grassley never defined what he meant by "contractor" and never used the word "employee" in his remarks, *see id.* at 31,527–29, so there is no reason to believe that he intended to draw such a distinction between the contractor and its employees. Furthermore, Sen. Grassley's amendment was crafted to *expand* contractor cost disallowance, not to limit it. *See, e.g., id.* at 31,528 ("Under current practices, there's no incentive for contractors to keep an eye on costs or keep a careful eye on what lawyers bill them in Government fraud cases. After this amendment, there will

be."); *id.* at 31,527 (explaining that the amendment was designed to avoid "[t]he anomalous result ... that the same Government that prosecutes the fraud case pays the cost of the defense" by the contractor's "high-priced lawyers"). Thus, Sen. Grassley's statement does not support the contractor's reasoning.

Indeed, if the legislative history shows anything, it shows knowledge and approval of the existing regulatory approach of not covering legal fees in proceedings involving employee convictions for fraud. The regulation was cited specifically in the Senate Report. S.Rep. No. 100–503, at 4, *reprinted in* 1988 U.S.C.C.A.N. at 5972. Under such circumstances, Congress is often deemed to have approved the existing regulatory approach. *See Young v. Cmty. Nutrition Inst.*, 476 U.S. 974, 983, 106 S.Ct. 2360, 90 L.Ed.2d 959 (1986) ("[A] 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 275, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974))); *San Huan New Materials High Tech, Inc. v. Int'l Trade Comm'n*, 161 F.3d 1347, 1355 (Fed.Cir.1998) ("The legislative history shows that Congress was fully aware of the agency regulations and practices at the time of legislating in their area, and absent some special circumstance the failure to change or refer to existing practices is reasonably viewed as ratification thereof.").

■■■ Having concluded that the statute is ambiguous, we turn to the analysis mandated by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Board suggested that the FAR regulations were not entitled to *Chevron* deference because it found "no indication that Congress entrusted the accommodation of conflicting policies on the

issue before us to the agencies through the FAR." *Entitlement Decision* at 152,930. We disagree. In *Chevron*, the Court held that courts reviewing agency interpretations of statutes must answer two questions: (1) "whether Congress has directly spoken to the precise question at issue," and if not, (2) "whether the agency's answer is based on a permissible construction of the statute." 467 U.S. at 842–43, 104 S.Ct. 2778. Thus, the correct inquiry is whether Congress has left an explicit or implicit gap for the agency to fill, *id.* at 843, 104 S.Ct. 2778, not whether Congress explicitly provided that the agency should resolve conflicting policies.

■■■ The FAR regulations are the very type of regulations that the Supreme Court in *Chevron* and later cases has held should be afforded deference. Not only has Congress specifically authorized the FAR, *see* 41 U.S.C. § 405a (2000), but, in the 1985 Act, it expressly authorized regulations adopting definitions of the statutory terms, such as "contractor." § 911(a), 99 Stat. at 683 (codified as amended at 10 U.S.C. § 2324(e)(2)). As the Supreme Court noted in *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), "a very good indicator of delegation meriting *Chevron* treatment [is] express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed." *Id.* at 229, 121 S.Ct. 2164. Not surprisingly, we have specifically held that the provisions of FAR are entitled to *Chevron* deference. *See, e.g., Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1321–22 (Fed.Cir.2003); *Newport News Shipbuilding and Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1552 (Fed.Cir.1993); *United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 578 (Fed.Cir.1991).

 It remains only to determine whether the regulations constitute a reasonable interpretation of the statute. As we have discussed above, FAR 31.205–47(b) effectively defines the statutory term "contractor" to include the employees of the contractor. That is plainly a reasonable interpretation of the statute, and similar agency interpretations appearing in other regulations have been held to be entitled to *Chevron* deference. For example, in *Meyer v. Holley,* 537 U.S. 280, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003), a regulation promulgated by the Department of Housing and Urban Development ("HUD") interpreted the word "person" in 42 U.S.C. § 3605(a) to include:

> any person who directs or controls, or has the right to direct or control, the conduct of another person with respect to any aspect of the sale ... of dwellings ... if that other person, acting within the scope of his or her authority as employee or agent of the directing or controlling person ... has engaged ... in a discriminatory housing practice.

24 C.F.R. § 103.20(b) (1999) (repealed). The Supreme Court deferred to this "reasonable interpretation" of the statute by HUD, citing *Chevron. Meyer,* 537 U.S. at 287–88, 123 S.Ct. 824; *see also, e.g., N. Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 520, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) (upholding a regulation by the Department of Health, Education, and Welfare that interpreted the word "person" in 20 U.S.C. § 1681(a) to encompass employees, as well as students, of educational institutions). We conclude that FAR 31–205.47(b), which defines "contractor" to include the contractor's employees, is entitled to *Chevron* deference, and it is, accordingly, binding.

Second, even if the statutory term "contractor" were construed to exclude employees, the 1985 and 1988 Acts authorized the Secretary of Defense to adopt supplemental cost disallowance rules going beyond the statute. In enacting the FAR, Congress intended to confer broad authority on the agencies to adopt cost disallowance principles. *See, e.g.,* 41 U.S.C. § 405(a) (2000). Nothing in the 1985 or 1988 Acts was designed to limit this authority. Rather, those statutes confirmed it. As noted in the 1985 Act, Congress adopted section 2324(e), which provided: "The Secretary shall prescribe regulations to implement this section. Such regulations may establish appropriate definitions, exclusions, limitations, and qualifications." § 911(a), 99 Stat. at 683 (codified as amended at 10 U.S.C. § 2324(e)(2)). We have previously characterized this provision as having "directed the Secretary of Defense to promulgate regulations prescribing specific categories of unallowable costs." *Bill Strong Enters., Inc. v. Shannon,* 49 F.3d 1541, 1548 (Fed.Cir.1995), *overruled in part on other grounds by Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1579 & n. 10 (Fed.Cir.1995) (*en banc*). Further confirmation of the breadth of the regulatory authority was the inclusion of subsection (f)(1), which, while not specifically directed to FAR itself, confirmed the authority of the Secretary of Defense in supplemental regulations "to clarify the FARs concerning the allowability and unallowability of a different set of categories of costs." *Id.* Nothing in the 1988 Act changed that approach. The 1988 Act recognized that defense costs (where there was no conviction) were to be allowed in part only if not disallowed by regulation. Furthermore, the 1988 Act expressly provided that allowable costs under subsection (k)(5) are allowed only "to the extent that such costs are determined to be otherwise allowable and allocable under the single Government-wide procurement regulation issued pursuant to section 4(4)(A) of the Office of Federal Procurement Policy Act (41 U.S.C. 403(4)(A))," *i.e.,* under FAR itself. § 8(b)(2), 102 Stat. at 4637 (codified

as amended at 10 U.S.C. § 2324(k)(5)(B)(i)).

The extension in FAR 31–205.47 of the subsection (k)(1) cost disallowance to employees of contractors, rather than contractors alone, falls squarely within the Secretary's authority under the 1985 and 1988 Acts. In short, contrary to the contractor's argument, the Secretary had authority to expand the disallowance in subsection (k)(1) to proceedings in which an employee of a contractor was convicted even though the contractor itself was not.

Thus, the FAR regulation in question is not inconsistent with the statute, and it is not invalid. The contractor's defense costs in that proceeding were therefore not allowable.

### III

A remaining question is whether this case needs to be remanded for a determination of whether the costs sought by the contractor resulted from the same proceeding as that in which Mr. Marcum pled guilty. The contractor argues that the proceedings in which the claimed costs were incurred and in which Mr. Marcum pled guilty were separate and that it is still entitled to recovery of its costs. The Board did not reach the issue of whether there was more than one proceeding in this case, see *Entitlement Decision* at 152,-932 n. 1, nor did it address the operation of subsection (k)(5)(C)[8] or its implementing regulation, 48 C.F.R. § 31.205–47(b)(5), in this context. Therefore, we remand to the Board for an initial determination whether the proceedings were separate, and, if they were, whether they involved the same contractor misconduct.

8. That subsection provides:
 In the case of a proceeding referred to in subparagraph (A), contractor costs otherwise allowable as reimbursable costs under this paragraph are not allowable if (i) such proceeding involves the same contractor

### CONCLUSION

For the foregoing reasons, we reverse the Board's decision and remand to it for further proceedings in accordance with this decision.

*REVERSED AND REMANDED*

### COSTS

No costs.

misconduct alleged as the basis of another criminal, civil, or administrative proceeding, and (ii) the costs of such other proceeding are not allowable under paragraph (1).
10 U.S.C. § 2324(k)(5)(C).