NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**DAYDANYON CORPORATION,**
*Appellant,*

v.

**DEPARTMENT OF DEFENSE,**
*Appellee.*

———————————

2014-1507

———————————

Appeal from the Armed Services Board of Contract Appeals in Nos. 57611, 57681, 57717, Administrative Judge David W. James Jr.

———————————

Decided: January 9, 2015

———————————

JOSEPH A. CAMARDO, JR., Camardo Law Firm, PC, of Auburn, New York, for appellant.

A. BONDURANT ELEY, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for appellee. With her on the brief were JOYCE F. BRANDA, Acting Assistant Attor-

ney General, ROBERT E. KIRSCHMAN, JR., Director, and MARTIN F. HOCKEY, JR., Assistant Director.

———————————

Before DYK, REYNA, and WALLACH, *Circuit Judges.*

DYK, *Circuit Judge.*

DayDanyon Corporation ("DayDanyon") appeals a decision of the Armed Services Board of Contract Appeals (the "Board") granting summary judgment to the government on DayDanyon's claim that the ordering deadline of the contract at issue was December 24, 2010, and that the government breached the contract by failing to order the guaranteed minimum quantity of Collapsible Joint Modular Intermodal Containers ("JMICs" or the "containers") by that date. Because the Board correctly interpreted the contract ordering period as ending on April 23, 2011, we affirm.

## BACKGROUND

On April 23, 2009, the Defense Supply Center Philadelphia ("DSCP"), now known as Defense Logistics Agency Troop Support ("DLATS"), awarded Contract No. SPMSED-09-D-0001 (the "contract") to DayDanyon for JMICs for use by the Naval Sea Systems Command. The contract provides, in relevant part:

> This is a[n] Indefinite Quantity Contract. Orders may be issued on this contract for a period of TWO YEARS.
>
> . . .
>
> After First Article Test approval, the required delivery for production quantities under this contract is 120 days after the date of the resulting delivery orders.

> The Guaranteed Minimum is a total of 500 containers, whether placed for a single CLIN, or combination of CLINS that collectively total 500 containers. The guaranteed minimum is 500 containers per year. Since this is a two year base contract the minimum quantity is multiplied by 2.

J.A. 196. The contract also incorporated several Federal Acquisition Regulation ("FAR") provisions, including FAR 52.216-22 INDEFINITE QUANTITY (OCT 1995), which provides, in relevant part:

> (d) Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period; provided, that the Contractor shall not be required to make any deliveries under this contract after Two Years[.]

J.A. 211; *see also* 48 C.F.R. § 52.216-22.[1]

---

[1] The contract also incorporated FAR 52.216-18, ORDERING (OCT 1995), which provides, in relevant part:

> (a) Any supplies and services to be furnished under this contract shall be ordered by issuance of delivery orders or task orders by the individuals or activities designated in the Schedule. Such orders may be issued—
>
> FROM: DATE OF CONTRACT AWARD
>
> THROUGH: TWO (2) YEARS

On April 29, 2010, DSCP approved DayDanyon's First Article Test sample, and authorized DayDanyon to begin production of the JMICs. On May 3, 2010, DSCP issued two delivery orders for a total of 500 units under the contract, each with a delivery date of August 31, 2010, 120 days following receipt of the order. As of November 23, 2010, the contracting officer had extended the delivery date of the orders to two dates in March 2011. DayDanyon did not deliver any JMICs to DSCP by the March 2011 delivery dates.

On April 6, 2011, DayDanyon sent the contracting officer a certified claim for $720,700.00, alleging that DSCP breached the contract by failing to order the guaranteed minimum of 1,000 JMICs by December 24, 2010. According to DayDanyon's claim, although the contract had "a

---

J.A. 210; *see also* 48 C.F.R. § 52.216-18. And FAR 52.216-9007, CONTRACT AND DELIVERY ORDER LIMITATIONS (JUL 2006), which provides, in relevant part:

(a) Delivery orders will specify delivery no less than 120 days from the date of the order.

. . .

(c) Guaranteed Minimum

(1) The Government guarantees that it will order under this contract . . . the following minimum, as applicable:

. . .

(ii) Base period of two or more years.

500 EA TOTAL (Quantity) multiplied by two[.]

J.A. 211; *see also* 48 C.F.R. § 52.216-9007.

two year base period running through April 23, 2011," DSCP was required to order the 1,000 JMICs by December 24, 2010, 120 days prior to the conclusion of the base period, because the contract provided that "delivery orders will specify delivery no less than 120 days from the date of the order," and because DayDanyon "shall not be required to make any deliveries under this contract after [t]wo [y]ears." J.A. 522 (quoting J.A. 211). The contracting officer responded that DayDanyon's claim was "premature" because "[t]he two year base period for [the contract] expires on April 23rd, 2011." J.A. 526. On April 20, 2011, the contracting officer terminated the contract for default, leading to a default termination claim submitted by DayDanyon on July 11, 2011. On May 18, 2011, DayDanyon filed another claim, which was materially identical to the April 6, 2011, claim. On July 15, 2011, the contracting officer denied the May 18, 2011, claim, explaining that because the contract was terminated on April 20, 2011, prior to the April 23, 2011, expiration of the base period, the government was not required to order the remainder of the guaranteed minimum quantity of JMICs.

DayDanyon appealed to the Board, which consolidated DayDanyon's appeals of three separate claims: (1) the default termination claim, No. 57681; (2) the April 6, 2011 claim, No. 57611; and (3) the May 18, 2011, claim, No. 57717. The Board dismissed the May 18, 2011, claim as duplicative of the April 6, 2011, claim. On the default termination claim, the Board denied the government's motion for summary judgment.[2] On DayDanyon's breach

---

[2]   The government did not appeal the denial of summary judgment in DayDanyon's default termination claim, and proceedings with respect to that claim remain ongoing before the Board. We need not and do not decide

claim, relating to the government's failure to order the requisite number of JMICs, the Board granted the government's motion for summary judgment because it rejected DayDanyon's interpretation of the contract to require the government to order 1,000 JMICs by December 24, 2010, as opposed to April 23, 2011.

DayDanyon appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).[3] We review the Board's legal determinations, including interpretations of contracts, de

---

whether the government properly terminated the contract for default.

[3] Our jurisdictional statute provides jurisdiction to this court over "an appeal from a final order or final decision" of the Board. 28 U.S.C. § 1295(a)(10). In this case, despite the ongoing Board proceedings over the default termination claim, we have jurisdiction to review the separate breach of contract claims. *See Dewey Elecs. Corp. v. United States*, 803 F.2d 650, 653–54 (Fed. Cir. 1986) ("In this case, multiple claims are involved and, while there might be a question as to whether the remanded claims meet the finality requirement, the claims involved in this appeal were decided with finality." (citations omitted)); *see also Brownlee v. Dyncorp*, 349 F.3d 1343, 1347 (Fed. Cir. 2003) ("Although [28 U.S.C. § 1295(a)(10)] requires that the Board's decision be 'final,' we have held that the concept of finality in this context is more flexible than, for example, the 'rigid district court concept of finality' required by 28 U.S.C. § 1291.") (quoting *Dewey*, 803 F.2d at 655)); *Elkins v. Gober*, 229 F.3d 1369, 1373–74 (Fed. Cir. 2000) ("This court has held, when reviewing decisions of agency boards of contract appeals, that a litigant's individual claims for relief may, in certain circumstances, be separable for purposes of appellate review." (citations omitted)).

novo. *Rockies Express Pipeline LLC v. Salazar*, 730 F.3d 1330, 1335–36 (Fed. Cir. 2013) (citations omitted).

DISCUSSION

The parties do not dispute that the contract required the government to order 1,000 JMICs prior to the termination of the contract, and that the government only ordered 500 JMICs before December 24, 2010. Instead, the dispute is over the date by which the government was required to order the additional 500 JMICs. DayDanyon contends that the applicable deadline was December 24, 2010, 120 days prior to the end of the two-year ordering period provided in the contract. The government responds that the deadline was April 23, 2011, the end of the two-year ordering period.

DayDanyon's contention is refuted by the plain language of the contract, which clearly provides for a two-year ordering period. *See Bell/Heery v. United States*, 739 F.3d 1324, 1331 (Fed. Cir. 2014) ("When interpreting a contract, if the provisions are clear and unambiguous, they must be given their plain and ordinary meaning." (citations and quotation marks omitted)). The contract unambiguously provides that "[o]rders may be issued on this contract for a period of TWO YEARS." J.A. 196. This language is repeated in the contract's incorporation of FAR 52.216-18, which provides that "orders may be issued" from the "DATE OF CONTRACT AWARD [April 23, 2009]" through "TWO (2) YEARS." J.A. 210; *see also* J.A. 211 (checking the box adjacent to "Base period of two or more years.").

The contract is ambiguous, however, as to orders placed by the government within 120 days of the conclusion of the two-year ordering period. This is because FAR 52.216-22(d) is subject to two plausible interpretations. On the one hand, the first sentence of FAR 52.216-22(d) provides that orders placed during the effective period of

the contract but not completed during the effective period "shall be completed by the Contractor within the time specified in the order," i.e., within 120 days. J.A. 211. Under this reading, the proviso that the "Contractor shall not be required to make any deliveries under this contract after Two Years," *id.*, simply emphasizes that the contractor need not deliver orders that are placed by the government after April 23, 2011, the end of the two-year ordering period. On the other hand, as the government argues, the proviso could also be read to suggest that although the government may place orders at any time during the two-year ordering period, DayDanyon "shall not be required," *id.*, to make any deliveries placed within 120 days of April 23, 2011. We need not resolve this ambiguity as to whether the contractor is obligated to deliver orders placed within 120 days of the end of the two-year period, because regardless of which of the above interpretations is correct, the contract cannot mean what DayDanyon says it means—that the contract prohibits orders placed after December 24, 2010, 120 days prior to the conclusion of the two-year period.

As the Board found, DayDanyon's interpretation, which reduces the effective ordering period of the contract from two years to twenty months, would render the contract's incorporation of FAR 52.216-22(d) meaningless. *See Bell/Heery*, 739 F.3d at 1331 ("A contract must also be construed as a whole and in a manner that gives meaning to all of its provisions and makes sense." (citations and quotation marks omitted)).

Thus, under the plain language of the contract, the government had until April 23, 2011, two years from the date of the contract award, to order the guaranteed minimum number of JMICs from DayDanyon whether or not DayDanyon was obligated to deliver beyond the two-year period. And as the Board found, because the government was not required to order the guaranteed minimum

amount of containers by December 24, 2010, the contractor's claim was properly rejected.

## AFFIRMED