NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————————

**BALFOUR BEATTY CONSTRUCTION, LLC,**
*Appellant*

**v.**

**ADMINISTRATOR OF THE GENERAL SERVICES ADMINISTRATION,**
*Appellee*

———————————————

2023-2229

———————————————

Appeal from the Civilian Board of Contract Appeals in No. 6750, Administrative Judge Harold C. Kullberg, Administrative Judge Kathleen J. O'Rourke, Administrative Judge Patricia J. Sheridan.

———————————————

Decided: March 13, 2025

———————————————

THOMAS HENDERSON DUPREE, JR., Gibson Dunn & Crutcher, LLP, Washington, DC, argued for appellant. Also represented by REGINALD JONES, DIANA LYN CURTIS SHUTZER, NICHOLAS SOLOSKY, Fox Rothschild LLP, Washington, DC.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice,

Washington, DC, argued for appellee. Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, CORINNE ANNE NIOSI.

———————————

Before REYNA, SCHALL, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Balfour Beatty Construction, LLC, appeals the decision of the Civilian Board of Contract Appeals that granted in part some of Balfour's claims to recover increased costs allegedly incurred because of compensable delay, errors in the solicitation bridging documents, differing site conditions, and changes to the contract. Balfour contends that it is entitled to recover the increased costs associated with the claims the Board denied. Because we conclude the Board erred in its design defect analysis, we vacate the Board's denial of the design defect claim with respect to the mat slab foundation and remand for further proceedings not inconsistent with this opinion.

I

In 2016, the General Services Administration issued a solicitation for a Request for Proposals from a list of qualified offerors for a construction project. GSA selected the qualified firms based on responses to a Request for Qualifications it had issued earlier in 2016. The project entailed construction of phase two of the central utilities plant to support the U.S. Department of Homeland Security Headquarters on the grounds of the former St. Elizabeths Hospital. J.A. 1–2 & n.2; *see also* J.A. 151. The Request for Qualifications specified that GSA was using a design-build bridging project delivery method and that the bridging documents were approximately 30% complete. J.A. 151; 1334. The contract required that the selected contractor validate the design within 60 days of the notice to proceed, and then complete the design. The bridging documents also stated:

> [t]he Bridging Documents are conceptual in nature and are intended to depict the overall intent of the project terms of general design concept, the major architectural elements, and describe the required performance of the other systems. As Bridging Documents they are preliminary in nature, are not fully coordinated and are not intended to indicate or describe the scope of work required for the full performance or completion of the project.

J.A. 5.

GSA awarded the contract to Balfour. Balfour alleges it ran into a variety of issues with the government's design, the site conditions, and various delays. Appellant's Opening Br. 8–20. Despite these issues, GSA accepted the project as substantially complete in 2019, and the project was deemed fully complete in early 2020. J.A. 156.

After the project was accepted as substantially complete, Balfour submitted a claim for increased costs. GSA's contracting officer denied the claim in full. Balfour appealed to the Board. The Board granted Balfour's claims in part and denied the remainder of the claims. Balfour timely filed its notice of appeal within 120 days of the Board's decision. We have jurisdiction under 41 U.S.C. § 7107(a)(1)(A) and 28 U.S.C. § 1295(a)(10).

## II

We review the Board's determinations on questions of law, including contract interpretation, de novo. *Reliable Contracting Grp., LLC v. Dep't of Veterans Affs.*, 779 F.3d 1329, 1331 (Fed. Cir. 2015) (internal citation omitted). The Board's factual determinations may not be set aside unless they are "(A) fraudulent, arbitrary or capricious; (B) so grossly erroneous as to necessarily imply bad faith; or (C) not supported by substantial evidence." 41 U.S.C. § 7107(b); *see also Rockies Express Pipeline LLC v. Salazar*,

730 F.3d 1330, 1335 (Fed. Cir. 2013). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Braun v. Dep't of Health & Hum. Servs.*, 983 F.3d 1295, 1301 (Fed. Cir. 2020) (internal quotation marks and citation omitted).

## III

Balfour raises a number of issues on appeal, but we need only discuss two in detail: design defects with respect to (1) the mat slab foundation and (2) the ventilation requirements. Balfour alleges that it incurred increased costs from "additional design and work scope associated with the required redesign . . . that arose out of deficiencies in the Bridging Design Documents provided by GSA." J.A. 81 (internal quotation marks omitted). Specifically, Balfour contends it needed to redesign and depart from the bridging design to accommodate a thicker mat slab, which was required to handle the loads of the equipment and building columns, and from having to increase the height of the space to accommodate the equipment needed to provide adequate ventilation. Appellant's Opening Br. 9–10. The Board denied Balfour's claims. J.A. 83.

In *United States v. Spearin*, the Supreme Court held that "if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." 248 U.S. 132, 136 (1918) (internal citations omitted). We have since clarified that this implied warranty attaches in contracts that contain design specifications, which "explicitly state how the contract is to be performed and permit no deviations." *Stuyvesant Dredging Co. v. U.S.*, 834 F.2d 1576, 1582 (Fed. Cir. 1987). But if the contract contains a performance specification, which specifies the result to be obtained but leaves the contractor free to determine how to achieve those results, the implied warranty does not attach. *Id.*

In a design-build bridging project delivery method, the government provides a partial design with the expectation that the contractor will complete the design and build the project. The Board analyzed the provisions of the contract and "consider[ed] to what extent a thirty-percent design . . . was design or performance." J.A. 82. The Board determined that the bridging documents did not contain a warranty for the design of the mat slab at a particular thickness. The Board noted that, in addition to the contract drawing that directed the contractor to match the existing foundation thickness of 18 inches, GSA provided calculations from GSA consultants that called for a 24-inch foundation. The Board concluded that because these documents "raised a question about the mat slab thickness that should have caused Balfour to raise the issue before contract award," Balfour was not entitled to recover costs related to designing the thicker mat slab. J.A. 83. We disagree.

The contract drawing indicated that Balfour should "match existing building foundations," which were 18 inches thick. J.A. 11, 83. We determine the language in the drawing is sufficiently definite to constitute a design specification, and the Board erred in construing this as a performance specification. We conclude that there was an implied warranty with respect to the mat slab thickness. Further, even if there were a conflict between the drawing and the calculations, the mat slab Balfour ended up having to build was between 43 and 53 inches thick—almost double what the calculations required.

The Board then considered the additional costs related to meeting ventilation requirements. Balfour argues it incurred additional costs in complying with ventilation requirements because compliant generators were too large to fit in the building space. *See* Appellant's Opening Br. 34–35. The Board noted that during the solicitation, GSA advised potential offerors that compliance with certain ventilation requirements "must be . . . assumed as the basis for bids." J.A. 83. Therefore, the Board determined that

Balfour was not entitled to any increased costs incurred in complying with these ventilation requirements. J.A. 84. We agree. The ventilation requirements were set out as a performance specification, and therefore, no implied warranty attached.

## IV

We have considered the remainder of Balfour's arguments and find no reversible error. Because we conclude that the Board erred in determining that there was no implied warranty with respect to the mat slab thickness, we reverse and remand for further proceedings not inconsistent with this opinion.

### VACATED AND REMANDED

### COSTS

Costs to appellant Balfour.