NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**WILLIAMS BUILDING COMPANY, INC.,**
*Appellant*

**v.**

**SECRETARY OF STATE,**
*Appellee*

_____

2023-2337

_____

Appeal from the Civilian Board of Contract Appeals in Nos. 6650, 7147, Administrative Judge Harold D. Lester, Jr, Administrative Judge Joseph A. Vergilio, Administrative Judge Kathleen J. O'Rourke.

_____

Decided:  July 23, 2025

_____

KEVIN MICHAEL COX, Camardo Law Firm, P.C., Auburn, NY, argued for appellant.

GEOFFREY M. LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, CORINNE ANNE NIOSI; RANDAL WAX, Office of Legal Adviser for Buildings

and Acquisitions, United States Department of State, Washington, DC.

————————————

Before LOURIE, DYK, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Williams Building Company, Inc. ("Williams") appeals from the decision of the Civilian Board of Contract Appeals ("the Board") that granted summary judgment in favor of the Department of State's Bureau of Overseas Building Operations ("OBO") on all three counts of its appeal to the Board. *Williams Bldg. Co. v. Dep't of State*, CBCA 23-1 B.C.A. ¶ 38328, 2023 WL 3144494 (Apr. 26, 2023) ("*Decision*"), J.A. 1–33. For Count I and most of Count II, the Board determined that prior bilateral contract modifications and releases barred recovery. For the remainder of Count II and Count III, the Board determined that Williams could not prove damages. For the following reasons, we *affirm*.

## BACKGROUND

As the Board noted, this case has "had a somewhat torturous history." *Decision,* at J.A. 2. With that in mind, only the details most salient to the issues on appeal are summarized below. *See id.* at J.A. 2–14 (providing a more detailed history).

On June 15, 2016, Williams entered into a firm-fixed-price contract with the OBO for renovations of an office space in Wuhan, China. J.A. 1657–60. Following delays and disputes over the original "issued for construction" documents, the parties agreed to contract modifications P00007 ("modification-7"), J.A. 1793–99, and P00008 ("modification-8"), J.A. 1800–06, on March 16 and June 15, 2018, respectively. The modifications replaced the original "issued for construction" documents with new documents, provided for an extension of time, and each included an

agreement by Williams to release the government from further liability "attributable to such facts or circumstances giving rise to the proposals for adjustment." J.A. 1799; J.A. 1806 (same).

Beginning in November 2018, Williams submitted a series of requests seeking additional money under the contract. *See Decision*, at J.A. 5. Among those requests were proposed change order ("PCO") 075 requesting an extension of time and a request for equitable adjustment ("REA") for alleged breaches of contract for a cardinal change due to the deficient original "issued for construction" documents and interference with Williams' subcontractor, Huashi. *Id.* at J.A. 5–6. Those requests eventually evolved into two certified claims submitted to OBO on May 9, 2019: (1) seeking a time extension—beyond what was granted in modification-8—for alleged government-caused delays after January 31, 2018, and (2) seeking compensation for a cardinal change claim and a breach of contract claim for alleged interference with Huashi. *Id.* at J.A. 7–8. On August 13, 2019, the OBO contracting officer issued a final decision denying both claims. *Id.* at J.A. 8; J.A. 2676–701.

Subsequently, on September 28, 2019, OBO and Williams settled the first claim seeking a time extension and a separate claim for customs storage fees with contract modification P00020 ("modification-20"). *See* J.A. 1839–50. Modification-20 provides that "[t]he contractor has three open certified legal claims related to customs storage fees, time delays, and cardinal changes to the contract. This [request for contract action ("RFCA")] represents a partial settlement of the first two of these claims . . . . Additional funding to settle the Breach of Contract claims [e.g., the cardinal change claim] will be requested when additional funds are available." J.A. 1847–48. The modification's description of the scope of work provides additional details including PCO 067 for "Additional Storage Costs," the aforementioned PCO 075 for "Time Extension," and another contractor release for claims "attributable to the facts

or circumstances set forth in [Williams'] above-referenced PCOs." J.A. 1850.

Then, on November 8, 2019, Williams appealed to the Board the contracting officer's August 13, 2019 decision with respect to the second May 9, 2019 claim for breach. Williams' complaint to the Board included three counts alleging breach of contract: (I) for a cardinal change to the contract, (II) for breach of the implied duty of good faith and fair dealing due to OBO's untimely responses to Williams' requests for information ("RFIs") and submittals, and (III) for breach of the implied duty of good faith and fair dealing due to OBO's alleged interferences with Williams' relationship with its subcontractor, Huashi. J.A. 93–114. The complaint did not request a specific quantity of damages, but rather damages "in an amount to be determined at a hearing before the Board." J.A. 115. OBO moved for a more definite statement on damages, which the Board granted. J.A. 40–44. The Board subsequently issued a scheduling order that required Williams to provide a detailed schedule of all costs it was seeking, along with identification of documentary support for said costs no later than October 16, 2020, and ordered that no other documentary support would be admitted at the hearing of the appeal. J.A. 47–48.

Following conclusion of discovery on June 30, 2021, the parties moved for summary judgment, and the Board granted judgment in favor of OBO on all three counts. For Count I, the Board determined that the broad releases in modification-7 and -8 barred the cardinal change claim and that modification-20 did not waive those releases. *Decision*, at J.A. 16–21. For Count II, the Board determined that the majority of the identified responses were associated with the circumstances of modification-7 and -8 and were thus barred by the releases contained therein and that Williams failed to identify any damages associated with the remainder. *Id.* at J.A. 21–24. For Count III, the Board determined that a genuine issue of fact existed

precluding summary judgment as to the breach, but that Williams failed to properly identify any costs associated with the alleged interference with Huashi because the evidence was first submitted by Williams in response to OBO's summary judgment motion. *Id.* at J.A. 24–29.

Williams timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(10).

## DISCUSSION

We review the Board's determinations on questions of law, including contract interpretation, *de novo*. *Rockies Express Pipeline LLC v. Salazar*, 730 F.3d 1330, 1335–36 (Fed. Cir. 2013). The Board's factual determinations may not be set aside unless they are "(A) fraudulent, arbitrary, or capricious; (B) so grossly erroneous as to necessarily imply bad faith; or (C) not supported by substantial evidence." 41 U.S.C. § 7107(b); *see also Rockies Express Pipeline*, 730 F.3d at 1335. The Board's decisions regarding procedure relating to discovery and evidentiary issues shall not be overturned unless an abuse of discretion is clear and is harmful. *Johnson Mgmt. Grp. CFC, Inc. v. Martinez*, 308 F.3d 1245, 1252 (Fed. Cir. 2002).

On appeal, Williams argues that the Board erred in its interpretation of modification-20. Williams' argument focuses on three sentences of the description of modification-20 included in the line-item summary table for the contract. The description is reproduced in its entirety herein below:

> This RFCA is for time delays experienced on the project related to design changes and a project shutdown caused by security concerns when the general contractor changed their major local subcontractor. *The contractor has three open certified legal claims related to storage fees, time delays, and cardinal changes to the contract. This RFCA represents a partial settlement of the first two of these*

> *claims.* Time delays compensated by this RFCA are related to the following changes during construction. (This RFCA addresses PCO 067 Storage costs related to customs warehousing of critical materials - $185,663.90. PCO 075 Additional Time related Costs - $4,578,004.66. [Total: $4,763,668.56]. Bond Cost for the preceding of $235,657.17 to cover contract extension to new end date of 29 February 2020. [Grand total: $4,999,325.73]. *Additional funding to settle the Breach of Contract claims will be requested when additional funds are available.*

J.A. 1847–48 (emphases added).  It is not clear whether the reference to the "Breach of Contract claims" in the last sentence includes more than the cardinal change claim, but both parties agree that the reference includes the cardinal change claim.  Specifically, Williams argues that the final sentence, "[a]dditional funding to settle the Breach of Contract claims will be requested when additional funds are available," represents an agreement to its entitlement to its cardinal change claim.  Williams Br. at 24.  According to Williams, the above language unambiguously provides that modification-20 was intended to be a global resolution of all Williams' outstanding claims, "a partial settlement of the first two" claims relating to storage fees and time delays, and an agreement to Williams' entitlement to the cardinal change claim by acknowledgement that those funds "*will* be requested *when* additional funds *are* available." *Id.* at 25–26.  We disagree.

The plain language of modification-20 does not concede liability for Williams' cardinal change claim.  Contrary to Williams' assertions, the above paragraph makes clear that modification-20 is meant to address the first two claims only.  It specifically notes that there are "three open certified legal claims" and the agreement "represents a partial settlement of the first two."  J.A. 1847.  The next two sentences go on to describe the settlement of the first two claims in greater detail without mentioning the cardinal

change claim. The final sentence then addresses the "Breach of Contract claim*s*" which includes the cardinal change claim. At most, the final sentence can be read as an agreement to keep the cardinal change claim open for future settlement negotiations after additional funds have been requested. That understanding is bolstered by the scope of work description on the last page of the agreement, which provides additional details of the agreement with respect to the storage costs and the time extension, including a release of further liability from those claims for the government. *See* J.A. 1850. What the scope of work does not contain is of particular note; there is no agreement to liability for the cardinal change claim or any mention of the claim at all. *See id.* When viewed as a whole, it is clear that modification-20 was not intended to concede liability for the cardinal change claim.

Williams makes two arguments in the alternative regarding interpretation of the modifications. First, it argues that modification-20 vitiated the releases in the earlier modification-7 and -8 and thus allows for its Count I cardinal change claim. Williams Br. at 27–30. And second, it argues that modification-7 and -8 did not release all costs associated with its breach claims allowing for additional costs associated with its cardinal change claim. *Id.* at 30–33. For similar reasons, those arguments also fail.

The basis for Williams' cardinal change and first breach of implied duty for delayed responses claims is the substitution of the original "issued for construction" documents with new "issued for construction" documents. The substitution of those documents is expressly addressed by modification-7, J.A. 1793–99, and time delays associated with the unsuitable original documents is expressly covered by modification-8, J.A. 1800–06. The language of the contractor releases is clear. Williams agreed to release the government from "any and *all* liability . . . attributable to such facts or circumstances giving rise to the proposals for adjustment" for both modifications. J.A. 1799 (emphasis

added); *see also* J.A. 1806.  At bottom, modification-7 and -8 released the government from "any and all" liability for additional claims associated with the document substitution, and nothing in the subsequent modification-20 demonstrates an intent to alter those original release agreements.  We therefore agree with the Board's conclusion that the prior bilateral contract modifications and releases barred Count I and the relevant portions of Count II.

Notwithstanding the contract interpretation arguments, Williams argues that the Board erred in granting summary judgment in favor of OBO on Count III because it erred in granting OBO's earlier motion for a more definite statement on costs.  According to Williams, the Board violated its Rule 6(d) because it provides that "[t]he Board *may* allow a party . . . to move for a more definite statement in lieu of filing an answer."  Williams Br. at 33–36 (quoting 48 C.F.R. § 6101.6).  That is because OBO both failed to seek leave to file its motion and filed its answer while the motion was still pending.  *Id.*  However, the Board specifically addressed that precise issue in its order.  *See* J.A. 42.  It interpreted OBO's motion as seeking to enforce Rule 6(a) that requires a complaint to "stat[e] in simple, concise, and direct terms the factual basis for each claim and the amount in controversy," and determined that Williams' complaint failed to satisfy that requirement.  J.A. 42 (quoting 48 C.F.R. § 6101.6).  The Board has discretion regarding issues of case management, and we see no abuse of discretion in its enforcement of its rules in that manner.  *See Johnson Mgmt. Grp.*, 308 F.3d at 1252 (finding no abuse of discretion in denial of discovery motions).

Williams further argues that the Board abused its discretion by issuing a scheduling order that required it to provide a detailed breakdown of its costs and supporting documentation because "requiring [Williams] to provide proof of all damages prior to discovery" was prejudicial.  Williams Br. at 35–36.  We disagree.  As an initial matter,

Williams was not required to provide proof of all damages prior to discovery. There was a nearly five-month window after the opening of discovery until the final breakdown of costs and supporting documentation were due. *See* J.A. 47–49 (opening discovery on May 27, 2020, and ordering a complete schedule of cost with supporting documentation due on October 16, 2020). Furthermore, Williams has offered no explanation as to why that time was insufficient for it to understand and identify its *own* costs that it was seeking as part of its breach claim and provide its *own* documentation supporting those costs. Williams has therefore failed to establish an abuse of discretion in the Board's order or demonstrate prejudice. *See Curtin v. Off. of Pers. Mgmt.*, 846 F.2d 1373, 1379 (Fed. Cir. 1988) ("If an abuse of discretion did occur with respect to the discovery and evidentiary rulings, in order for petitioner to prevail on these issues he must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case.").

Williams' argument continues that the Board erred by refusing to consider its evidence of costs first submitted in its opposition to summary judgment because it "did not have a full understanding of th[o]se costs until it reviewed documents provided by OBO." Williams Br. at 36. Again, we disagree. Williams' brief goes on to identify a wide variety of evidence from discovery that speaks to the merits of its breach claim, but none that demonstrates that Williams was unaware of the costs of the alleged breach or that it could not have identified those costs and the supporting documents in accordance with the Board's scheduling order. *See id.* at 38–52. Because the Board did not abuse its discretion in issuing the scheduling order, we see no abuse of discretion in enforcing it later in the proceeding to grant summary judgment in favor of OBO on Count III.

10    WILLIAMS BUILDING COMPANY, INC. v. SECRETARY OF STATE

CONCLUSION

We have considered Williams' remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the decision of the Board.

**AFFIRMED**